**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RUSSELL TARDO, ET AL** | **CIVIL ACTION** |
| **versus** | **No. 08-1165** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **SECTION: "I"/1** |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by defendant, State Farm Fire and Casualty Company ("State Farm"), with respect to plaintiffs' claim for penalties under Louisiana Revised Statutes § 22:658 and § 22:1220. For the following reasons, the motion is **GRANTED**.

## BACKGROUND

Plaintiffs, Russell and Diane Tardo, owned rental property in Chalmette, Louisiana when Hurricane Katrina struck on August 29, 2005.[1] Following the hurricane, plaintiffs notified their insurer, State Farm, of damage to their two rental units.[2] At the time of the hurricane, State Farm's policy insured both of plaintiffs' rental units as follows: $129,300.00 for dwelling under Coverage A, $12,930.00 for dwelling extension under Coverage A, $6,465.00 for personal property under Coverage B, and

---

[1] Rec. Doc. No. 1, para. I; Rec. Doc. No. 46-15, para. 1; Rec. Doc. No. 49-2, para. 1.

[2] Rec. Doc. No. 46-15, para. 1; Rec. Doc. No. 49-2, para. 1.

1

actual loss for loss of rents under Coverage C.[3]

State Farm conducted two inspections of plaintiffs' property and paid plaintiffs $24,141.41 for structural damage to the upstairs rental unit under Coverage A.[4] State Farm denied coverage for the downstairs rental unit based on its determination that the damage was caused by flood, an excluded peril under the policy.[5] Following their receipt of State Farm's payment, plaintiffs did not request additional payments under Coverage A, nor did they advise State Farm that the amount tendered was insufficient.[6]

Plaintiffs advised State Farm on or about January 30, 2006 that the upstairs unit would become available for rent by February, 2006.[7] State Farm then tendered $3,000 under Coverage C for loss of rent from September, 2005 to January, 2006 based on plaintiffs' statement that rent was $600 a month.[8] State Farm did not tender loss of rent benefits for the downstairs unit based on its determination that flood waters had rendered the unit

---

[3] Rec. Doc. No. 46-5, p. 20.

[4] Rec. Doc. No. 46-15, 2; Rec. Doc. No. 49-2, para. 2. State Farm identified damages totaling an actual cash value of $25,141.41 and then subtracted the policy's $1,000 deductible.

[5] *Id.* at para. 4.

[6] *Id.* at para. 5.

[7] *Id.* at para. 6.

[8] *Id.* at para. 7.

uninhabitable.[9]

Plaintiffs did not contact State Farm again until August 22, 2007 when they sent a letter requesting additional payment for loss of rents.[10] Once again, plaintiffs did not request an additional payment for dwelling damage under Coverage A.[11]

On August 28, 2007, plaintiffs filed this lawsuit in Louisiana state court against five different insurers.[12] The lawsuit was removed to this Court in October, 2007. Following an order severing plaintiffs' claims against each insurer, plaintiffs filed an amended complaint against State Farm, alleging that State Farm owes plaintiffs additional payments under their policy for wind damage in addition to penalties under Louisiana Revised Statutes § 22:658 and § 22:1220 for State Farm's failure to tender timely and sufficient payment.[13] State Farm filed this motion for partial summary on the ground that plaintiffs cannot demonstrate any bad faith conduct under Louisiana Revised Statutes § 22:658 and § 22:1220.

---

[9]*Id.* at para. 8.

[10]*Id.* at paras. 10-12.

[11]*Id.* at para. 12.

[12]Rec. Doc. No. 1-2, para. 2.

[13]Rec. Doc. No. 1, para. VII-VIII. After the commencement of this litigation, the Louisiana legislature re-designated §22:658 as § 22:1892 and § 22:1220 as § 22:1973, effective January 1, 2009. To avoid confusion, the Court will refer to the statutes by their former numbers.

3

**LAW AND ANALYSIS**

I.  **STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by

4

only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II. **BAD FAITH PENALTIES**

Louisiana law establishes that insurers owe certain duties to their insureds in adjusting and paying claims. Section 22:658 provides a penalty for an insurer's failure to pay a claim within thirty days after receipt of satisfactory proof of loss if the failure was arbitrary, capricious, or without probable cause. La. Rev. Stat. Ann. § 22:658.[14] Section 22:1220(B)(5) provides

---

[14] § 22:658 provides in pertinent part:
  A. (1) All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured . . . .
    (3)... In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer

5

that an insurer owes a duty of good faith and fair dealing to an insured and it similarly provides a penalty for an insurer's failure to pay a claim within sixty days after receipt of satisfactory proof of loss if the failure was arbitrary, capricious, or without probable cause. La. Rev. Stat. Ann. § 22:1220.[15] These statutes[16] prohibit "virtually identical"

---

to the penalties provided in R.S. 22:1220.
. . . .
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proof of loss of that claim . . . or failure to make such payment within thirty days after written agreement or settlement . . . , when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured..., or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.

[15]§ 22:1220 provides in pertinent part:
A. An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due

6

conduct, the primary difference being the time periods allowed for payment. *Korbel v. Lexington Ins. Co.*, 308 Fed. App'x 800, 803 (5th Cir. 2009)(quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1020 (La. 2003)).

In order to recover penalties pursuant to these statutes, the insured must establish: "'(i) that the insurer received a satisfactory proof of loss,[17] (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer's failure to pay was arbitrary and capricious.'"[18] *Grilleta v. Lexington Ins. Co.*, 558 F.3d 359, 368 (5th Cir. 2009)(quoting *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 896 So.2d 230, 233 (La. Ct. App. 2005)); *see also Reed*, 857 So. 2d at 1020; *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 206 (La. 2008); *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 752

---

any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

[16]The parties have agreed that any amendments to these statutes are not retroactive. Rec. Doc. No. 28.

[17] Satisfactory proof of loss "is that which is sufficient to *fully apprise* the insurer of the insured's claim." *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985).

[18] The phrase "arbitrary, capricious, or without probable cause" is "synonymous with vexatious." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003). A "'vexatious refusal to pay' means unjustified, without reasonable or probable cause or excuse." *Id.*

7

(La. Ct. App. 1999). These statutes are "penal in nature and, consequently, must be strictly construed." *Hart v. Allstate*, 437 So. 2d 823, 827 (La. 1983). Accordingly, the insured must "clearly show[] that the insurer was arbitrary, capricious, and without probable cause in refusing to pay." *Block*, 742 So. 2d at 751; *Reed*, 857 So. 2d at 1021. Further, "[t]he statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed*, 857 So. 2d at 1021.

### III. **DISCUSSION**

State Farm argues that plaintiffs cannot demonstrate that State Farm failed "to tender timely and sufficient payment under LSA R.S. 22:658 and LSA R.S. 22:1220"[19] or that any failure by State Farm to pay was arbitrary and capricious.[20] According to State Farm, plaintiffs' responses to discovery requests failed to articulate any specific conduct that was arbitrary and capricious. State Farm further argues that plaintiffs' discovery responses did not suggest that State Farm had received sufficient proof of loss justifying payment beyond the tendered amounts and that plaintiffs did not make a claim for additional property damage benefits until they filed this lawsuit.[21]

---

[19] Rec. Doc. No. 1, para. VIII.

[20] Rec. Doc. No. 46-2, p. 7.

[21] Rec. Doc. No. 46-2, pp. 9, 15.

Plaintiffs contend that State Farm acted arbitrarily and capriciously through the inadequate inspections conducted by its two adjusters.[22] The first adjuster, according to plaintiffs, did not enter the property to inspect the interior.[23] Plaintiffs admit that State Farm sent a second adjuster following their request for reinspection and that this adjuster found extensive interior damage.[24] Nonetheless, plaintiffs claim that the second adjuster's report fails to "fully identif[y] the specific items that plaintiffs' expert identified and that the estimate prepared by plaintiffs' adjuster "more accurately reflects the wind damage."[25]

The only evidence that plaintiffs submit in support of their claim is the expert report of Steve Hitchcock ("Hitchcock"). Hitchcock's letter, however, is inadmissible summary judgment evidence as it is neither sworn nor authenticated.[26] *See Templet*

---

[22]Rec. Doc. No. 49, p. 3.

[23]Plaintiffs direct the Court to their expert's report which opines that the lack of interior photographs and the adjuster's statement that "[t]here shouldn't be any interior water damage from the roof" indicate that the adjuster did not inspect the interior of the property. Rec. Doc. No. 49-4, p. 10.
Plaintiffs' expert also states that the adjuster failed to include damage from a kitchen fire in his estimate. Rec. Doc. No. 49-4, p. 10. However, plaintiffs do not dispute that State Farm opened a separate claim and tendered payment with respect to the kitchen fire, which occurred prior to Hurricane Katrina. Rec. Doc. No. 46-15, para. 15; Rec. Doc. No. 49-2, para. 15.

[24]Rec. Doc. No. 49, p. 2.

[25]*Id.*

[26]The declaration of Sassoon Sales does not cure the defect as plaintiffs' attorney cannot swear to the truthfulness of the statements made by Hitchcock in his report. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2722, at 382-84 (3d ed. 1998). ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a

9

*v. Hydrochem Inc.*, 367 F.3d 473, 481 n. 5 (5th Cir. 2004)(stating that the reports of treating physicians "would most certainly not satisfy the requirements of Rule 56(c) and 56(e) for sworn, authenticated summary judgment evidence"); *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191-92 (5th Cir. 1991). Moreover, even if Hitchcock's report was admissible, plaintiffs entirely fail to address whether State Farm received a satisfactory proof of loss to prompt it to further investigate or tender additional payments. *See Reed*, 857 So. 2d at 1020-21.

In light of State Farm's contention that plaintiffs never, prior to the filing of this lawsuit, submitted any information showing that they were entitled to additional benefits or that they requested the same,[27] plaintiffs cannot survive summary judgment solely by offering evidence of conduct that they contend was arbitrary and capricious. Plaintiffs must also offer evidence that they apprised State Farm of the extent of their wind-caused damage. The Louisiana Supreme Court has explained:

> One who claims entitlement to penalties and attorney's fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to showing that the insurer was arbitrary, capricious, or without probable cause. It logically follows from this burden that a plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not

---

person through whom the exhibits could be admitted into evidence. Thus, a letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or a deposition.")

[27]Rec. Doc. No. 46-2, p. 15.

> relay that information to the insurer is not entitled
> to a finding that the insurer was arbitrary or
> capricious.

*Reed*, 857 So. 2d at 1020-21.

Despite plaintiffs' claim that the second adjuster's estimate did not reflect the full extent of wind damage, they offer no evidence that they informed State Farm, prior to the filing of this lawsuit, that the second adjustment was incomplete or that the $24,141.41 payment was inadequate. Plaintiffs fail to offer evidence that they relayed **any** information, let alone a satisfactory proof of loss[28], to State Farm concerning further property damage.[29] In fact, the only evidence that plaintiffs offer which addresses their submission of a proof of loss is Hitchcock's expert report referencing a July, 2008 estimate prepared by plaintiffs' adjuster **after** the filing of this lawsuit.

Indeed, plaintiffs concede that prior to the filing of this lawsuit they did not advise State Farm that they were owed additional payment for dwelling damage "or that they felt State

---

[28] "[T]o show 'satisfactory proof of loss,' the insurer must 'receive[] sufficient information to act on the claim.'" *Grilleta*, 558 F.3d at 368 (quoting *Sevier v. U.S. Fidelity & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986)). "Satisfactory proof of loss must include 'the extent of damages.'" *Korbel*, 308 Fed. App'x at 803 (quoting *Reed*, 857 So. 2d at 1019.). Courts recognize that a proof of loss may be "oral or written." *Id.*

[29] The Court recognizes that the estimate by State Farm's own adjuster may constitute a satisfactory proof of loss. *See Korbel*, 308 Fed. App'x at 804. However, plaintiffs do not argue that State Farm failed to timely pay after its adjusters inspected the property. Rather, plaintiffs argue that the adjusters' reports were incomplete and that State Farm owes them payment for further damage.

11

Farm's Coverage A tender was insufficient in any respect."[30] Plaintiffs also concede that they did not provide any documentation to State Farm showing that they were owed additional payments for dwelling damage.[31]

There is no evidence that State Farm knew prior to the filing of this lawsuit that plaintiffs disagreed with the amount that State Farm had tendered for dwelling damage or that plaintiffs believed that the reports prepared by State Farm's first and second adjusters were incomplete. In the absence of evidence that plaintiffs had informed State Farm that it owed additional payment for wind-caused dwelling damage, plaintiffs cannot establish that State Farm arbitrarily and capriciously failed to tender timely and sufficient payment under Coverage A. *See Reed*, 857 So. 2d at 1021 ("Whether or not a refusal to pay is arbitrary, capricious or without probable cause depends on the facts known to the insurer at the time of its action."); *see also*

---

[30]Rec. Doc. No. 46-15, para. 5; Rec. Doc. No. 49-2, para. 5.Plaintiffs did submit a letter to State Farm on August 22, 2007 advising State Farm that they believed that they were entitled to additional payment for loss of rent. Rec. Doc. No. 46-8. However, plaintiffs' do not argue in their memorandum that they are entitled to bad faith penalties for State Farm's failure to timely tender additional loss of rent payments. Plaintiffs commenced this litigation six days after sending the August 22, 2007 letter. Further, it is undisputed that plaintiffs' August 22, 2007 letter did not request additional payment for dwelling damage under Coverage A. Rec. Doc. No. 46-15, para. 12; Rec. Doc. No. 49-2, para. 12; Rec. Doc. No. 46-8.

[31]In response to State Farm's request for admission that "prior to filing the instant lawsuit (or the preceding lawsuit prior to severance), you did not provide to State Farm any documentation, such as repair estimates or receipts, indicating that you are owed additional proceeds for structural damages to your subject properties," plaintiffs stated: "Russell and Diane Tardo did not have any documents to provide to State Farm prior to filing the lawsuit." Rec. Doc. No. 46-11, p. 3 (Request for Admission No. 2); Rec. Doc. No. 46-12, p. 1, para. 2.

12

*Gates v. Auto Family Ins. Co.*, No. 06-4394, 2007 WL 1464259, at *4 (granting summary judgment with respect to plaintiffs' claims for bad faith penalties where "[p]laintiffs have not, either in their complaint or opposition to summary judgment, alleged any facts tending to show that [the insurer] knew it owed plaintiffs more money for wind damage and when it possessed such knowledge.").

For the foregoing reasons,

**IT IS ORDERED** that State Farm's motion for partial summary judgment is **GRANTED** and that plaintiffs' claim for statutory penalties under § 22:658 and § 22:1220 is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that in light of this order granting State Farm's motion for summary judgment, State Farm's motion to strike the declaration of Sassoon Sales as an exhibit to the motion for summary judgment is **DISMISSED AS MOOT.** The Court will resolve the motion to strike the report and testimony of Hitchcock once it has had the opportunity to review the arguments of each party.

New Orleans, Louisiana, June 18th, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**